AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  22-287 |
| THE CONTENTS OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER 956-588-6673 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: U.S. Department of Transportation –  Office of Inspector General (U.S. DOT-OIG) , Washington, District of Columbia

located in the _____ District of _____Columbia_____ , there is now concealed *(identify the person or describe the property to be seized)*: See attached affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| Title 18, USC 201 | Bribery |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

USDOT-OIG Special Agent Omar Cantu
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and state:  Washington, DC

_____
*Judge's signature*

Zia M. Faruqui, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CONTENTS OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER **956-588-6673** | Case No. 22-287<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Omar Cantu, a Special Agent with the United States Department of Transportation –

Office of Inspector General (U.S. DOT-OIG) being first duly sworn, hereby depose and state as

follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the search of government-issued

Apple iPhone 11 assigned call number 956-588-6673, (TARGET DEVICE), utilized by Patrick

GORENA, who resides at 5418 Remington Dr., Harlingen, Texas, 78552 and more fully described

in Attachment A, for information more fully described in Attachment B.

2.      I am a Special Agent with the United States Department of Transportation – Office

of Inspector General (U.S. DOT-OIG) and have been since March 2021. Prior to that, I was a

Special Agent with Homeland Security Investigations (HSI) between December 2016 and March

2021. I have a Bachelor's of Business Administration in Accounting and was an auditor with

Defense Contract Audit Agency (DCAA) and the Alcohol and Tobacco Tax and Trade Bureau

(TTB) for 5 years prior to my law enforcement experience. I served in the United States Marine

Corps from 2004 through 2008 and deployed twice to the Iraq in support of Operation Iraqi

Freedom. I have successfully completed Criminal Investigator Training Program (CITP) and

Homeland Security Investigations Special Agent Training (HSISAT) on the Federal Law

1

Enforcement Training Center (FLETC) in Glynco, GA. During my law enforcement career, I have conducted and participated in physical and electronic surveillance, execution of search warrants, interviews of victims, witnesses, cooperating defendants, and confidential informants and the review of recorded conversations and records. Through my training, education, and experience, I have become familiar generally with the manner in which criminal acts are committed such as how bribery and fraud schemes are executed, the methods of payment for such bribes, and the efforts of persons involved in such activity to avoid detection by law enforcement.

3.      Based on the facts set forth in this affidavit, there is probable cause to believe the TARGET DEVICE identified in Attachment A is associated with a violation of Title 18, United States Code, Section 201, Bribery and there is probable cause to believe the TARGET DEVICE contains evidence, fruits and instrumentalities of said crime. The applied-for warrant would authorize the forensic examination of the TARGET DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

4.      This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers, as well as my training and experience concerning the use of the TARGET DEVICE in criminal activity. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. The contents of the documents and the actions, statements, and conversations of the others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## PROBABLE CAUSE

5.   GORENA was employed as a Border Investigator for the Federal Motor Carrier Safety Administration (FMCSA) of the United States Department of Transportation from approximately

2

2000 until August 15, 2022. FMCSA was established within the Department of Transportation primarily to prevent commercial motor vehicle-related fatalities and injuries. As part of this mission, the FMCSA employs investigators to review the books and records of companies that operate with a USDOT number. Civil penalties may be assessed against companies that are not in compliance with Federal Motor Carrier Safety Regulations.

6.   FMCSA issued TARGET DEVICE to GORENA to perform his official duties as a Border Investigator. GORENA had access to U.S. Department of Transportation (U.S. DOT) email, internet, applications, and contacts via TARGET DEVICE. GORENA was also issued a laptop computer to perform his duties as a Border Investigator. In order to operate this laptop, GORENA had to accept a banner warning that he was accessing a "Government information system" that included his computer, his computer network, and all other devices and storage media that connected to the computer or the computer network. The banner required that by using the computer GORENA consented that he had no expectation of privacy in the Government information system and that his information and communications could be monitored, searched and seized by the Government for any lawful purpose.

7.   Although the TARGET DEVICE connects to the Government information system, this search warrant is for applied in an abundance of caution due to FMCSA not having an explicit "banner" warning its employees they have no reasonable expectation of privacy on a government-issued cellular device similar to the banner on his computer.

8.   On or about July 20, 2022, GORENA initiated a safety investigation for Company A. GORENA informed Individual A, who is an employee of Company A, that he could either write up his report with over $15,000 in fines or Company A could pay him directly $3,500 in return for

a more favorable audit report. GORENA initiated conversations and text messages with employee of Company A utilizing TARGET DEVICE.

9.    On or about July 21, 2022, GORENA contacted Individual A utilizing the TARGET DEVICE. GORENA informed individual A to only contact him on his personal cellular device at phone number 956-500-3309. GORENA did not want Individual A to communicate with him using TARGET DEVICE.

10.    On or about July 26, 2022, Department of Transportation Office of Inspector General (DOT-OIG) received a complaint regarding a bribe solicitation allegation against GORENA. The complaint was submitted by Individual A. Individual A stated that on or about July 20, 2022, GORENA arrived at Company A to perform a safety investigation of the company's records. Individual A stated that during the audit, GORENA was rude and unprofessional. At the conclusion of the audit, GORENA threatened to fine the company $15,000 and shut the company down for violations of DOT regulations. According to Individual A, GORENA told them that they could avoid these consequences if they paid him $3,500 in cash, in exchange for which he would not fine the company $15,000 and would provide a favorable report of his findings, insuring there would be no fines or interruption of business. GORENA warned Individual A not to tell anyone of the offer, implying that the deal would be off should they violate his confidence. GORENA also told Individual A they had to pay in cash because he did not want any paper trail.

11.    On or about July 28, 2022, at the direction of investigators, Individual A informed GORENA that Individual B would be coordinating the money delivery on behalf of Company A. Individual B was actually an undercover law enforcement officer.  In a recorded conversation, Individual B and GORENA discussed a meeting to deliver the money and the terms of the

4

exchange. At the conclusion of the call, Individual B and GORENA agreed to meet at noon in McAllen, Texas on July 29, 2022.

12. On July 29, 2022, Individual B called GORENA on his personal telephone and said that they could not meet that day. Instead, both individual B and GORENA agreed to meet on July 30, 2022.

13. On July 30, 2022, Individual B met with GORENA at the Valle Vista Mall in Harlingen, Texas. GORENA arrived alone to the meet in a vehicle registered to Individual C. Individual B negotiated with GORENA in an effort to reduce the price to be paid and GORENA eventually agreed to accept a payment of $2,000. GORENA directed Individual B to put the money in the passenger side door of the vehicle he was driving. The exchange was audio and video recorded.

14. At the conclusion of the exchange, Individual B went inside the mall. GORENA left the Valle Vista Mall and then conducted a series of erratic driving maneuvers, such as U-turns and retracing his routes. GORENA then positioned the vehicle he was driving in the parking lot directly across from Individual B's vehicle. After approximately 13 minutes, GORENA drove his vehicle around Individual B's vehicle and departed the area.

15. Based on the affiant's training and experience, GORENA's sporadic contact with Individual A through multiple telephone numbers, listing a non-residential address as his home address on government forms, showing up to meet Individual B in a vehicle registered to another individual, and utilizing erratic driving were techniques often utilized to frustrate law enforcement surveillance efforts. This information supports the allegation that GORENA is involved in the reported criminal activity and is utilizing multiple techniques to conceal the location of his home

address. The techniques used by GORENA also indicate that the TARGET DEVICE was utilized for criminal activity.

16.   Affiant knows through training and experience that File System data extractions from mobile devices can yield data which can include deleted data, data that has been overwritten, or data that is not typically saved by the device as part of the device's logic operation.

17.   Through your affiant's training, experience, and debriefing of other criminal suspects, it has been found these subjects use mobile data devices to communicate the planning/act of their crimes. These communications have been through phone calls, video calls, video messaging, text messages, picture messaging, third party applications, and email.

18.   Cellular devices constantly capture and record location data.   This data is transmitted by the mobile device's operating system.  This feature cannot be disabled.  The device is able to collect location information by reporting from three different sources.  These sources are cell towers it is connected to, known WIFI hotspots the device communicates with, and GPS coordinates. The accuracy of this location data can vary from several miles to a few feet.  Accuracy seen depends on the source of the data, GPS will typically be 50 meters or less, WIFI locations will typically be 100 meters of less, and cell towers can produce results that are several miles.

19.   The TARGET DEVICE is currently in the possession/immediate control of the Federal Bureau of Investigations (FBI) located at 1200 N McColl Rd, McAllen, TX 78501, after TARGET DEVICE was seized from GORENA on August 12, 2022.

## TECHNICAL TERMS

20.   Based on your affiant's training and experience, he uses the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other devices. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and telephone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

21.     Based on your affiant's training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, he knows that the TARGET DEVICE has capabilities that allow them to serve as wireless telephones and a laptop. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.     Based on your affiant's knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer are evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

8

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

23. Your affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the TARGET DEVICE as described in Attachment A to seek the items described in Attachment B, based on suspected violations of Title 18, United States Code, Section 201, Bribery.

## AUTHORIZATION REQUEST

Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 18, United States Code, Section 201, more fully described in Attachment B may be located in the TARGET DEVICE, more fully described in Attachment A.

Therefore, affiant requests that the Court issue a search warrant, pursuant to Federal Rule of Criminal Procedure 41 that authorizes members of the U.S. Department of Transportation –

Office of Inspector General (U.S. DOT-OIG) or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to search TARGET DEVICE within the District of Columbia within 14 days of the issuance of the proposed warrant.

I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed for 30 days after the date of the filing of the requested search warrant. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Omar Cantu
Special Agent
U.S. Department of Transportation - OIG

Subscribed and sworn to me telephonically on this the ____ day of September, 2022, and I find probable cause.

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF THE DISTRICT OF COLUMBIA

## ATTACHMENT A

The property to be searched consists of the cellular device assigned call number 956-588-6673 in the possession/immediate control of the DOT-OIG located within the District of Columbia.

This warrant authorizes the forensic examination of the TARGET DEVICE for the purpose of identifying the electronically stored information described in Attachment B.



11

## ATTACHMENT B

All records on the TARGET DEVICE described in Attachment A that relate to violations of 18 U.S.C. § 201 (Bribery) including:

a. Lists of contacts and related identifying information;

b. Any information regarding calendar, schedule or travel information;

c. All bank records, checks, credit card bills, account information, and other financial records.

d. Telephone number of the particular TARGET DEVICE and other identifying information for the TARGET DEVICE including ESN and IMEI;

e. Incoming and outgoing call data;

f. Dates and times of telephone calls;

g. Address book information (contact names and associated telephone numbers, photographs, addresses, and e-mail addresses)

h. Missed, received and dialed calls,

i. Text message log and text message content stored on the TARGET DEVICE pertaining to bribery, and related crimes.

j. Stored images and/or videos, and e-mails pertaining to bribery and associated offenses.

k. Records of user attribution showing who used or owned the TARGET DEVICE at the time the things in this warrant were created, edited, or deleted, such as logs, telephone books, unsaved usernames and passwords, documents, and browsing history;

l.  Records of wire transfers and other money transfers including dates, times, amounts, and locations; and

m.  Records and data that indicate the TARGET DEVICE's locations including but not limited to metadata contained on images, internet history, apps, and text messages.

n.  Records of Internet Protocol addresses used;

o.  Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.